452 S.E.2d 899

**Loretta C. STEWART, Ellen P. Crawford, Margie G. Green, Norma L. Peck, Harry N. Stewart, Jr., and Harry N. Stewart, Jr., Administrator of the Estate of Harry N. Stewart, Sr., Plaintiffs Below, Appellants,**

v.

**SMC, INC., A Corporation, Third–Party Plaintiff Below, Appellee,**

v.

**Art ASHLEY, Sheriff of Kanawha County, and Robert B. Howell, Deputy Commissioner of Forfeited and Delinquent Lands for Kanawha County, Third–Party Defendants Below, Appellees.**

No. 22163.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 27, 1994.

Decided Dec. 9, 1994.

---

J. Stephen Max, Charleston, for appellants.

Christopher S. Butch, Charleston, for appellee, SMC, Inc.

David E. Schumacher, Shuman, Annand & Poe, Charleston, for appellee, Art Ashley.

John D. Hoffman, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Charleston, for appellee, Robert B. Howell.

PER CURIAM:

This is an appeal from orders of the Circuit Court of Kanawha County, which *inter alia,* granted summary judgment in favor of SMC, Inc. (hereinafter "appellee"), holding that the appellee had valid title to a certain parcel of real estate it purchased from the State at a tax sale. The appellants, Loretta C. Stewart, Ellen P. Crawford, Margie G. Green, Norma L. Peck, Harry N. Stewart,

Jr. and Harry N. Stewart, Jr., as Administrator of the Estate of Harry N. Stewart, Sr., deceased (hereinafter "appellants"), seek to set aside the tax deed and to have ownership of the real estate restored to them, the rightful owners thereof. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, the judgment of the trial court is affirmed.

I

The facts in this case are, for the most part, undisputed. By deed dated May 19, 1922, B.N. Poling and his wife conveyed a parcel of real estate to Mary Poling. This real estate was described in the land books as "Pt Lt 1 Bk 40 50 × 323 W Charleston" and was recorded in the Kanawha County Clerk's office in Deed Book 346, at page 196. Mary Poling subsequently married Clyde F. Hicks. Mr. Hicks died on July 25, 1970.

Due to a typographical error made in 1947 by the Kanawha County Assessor's Office, the real estate was assessed in the name of "Mary Polan," as opposed to the correct name of "Mary Poling." Similarly, the Kanawha County Sheriff's Office taxed the real estate in the incorrect name of "Mary Polan." Though this mistake was never corrected, the *ad valorem* real property taxes were regularly paid.

On June 25, 1986, Mary Poling Hicks died testate, devising the subject real estate to Harry N. Stewart, Sr. On July 26, 1986, approximately one month later, Mr. Stewart, Sr. died intestate, leaving as his heirs, the appellants herein. Harry N. Stewart, Jr. became administrator of his father's estate on or about October 26, 1986.

Subsequently, the 1987 taxes on the real estate were not paid and thus, became delinquent.[1] According to the affidavit of Mark Jones, Assistant Chief Tax Deputy for the Kanawha County Sheriff's Tax Office, legal advertisement of the delinquency was published in the Charleston Daily Mail newspaper on May 21, 1988, pursuant to *W.Va.Code,* 11A–2–13 [1983],[2] showing a delinquency of $25.48. Second notice of the delinquency was published in the Charleston Daily Mail on October 8, 1988, pursuant to *W.Va.Code,* 11A–3–2 [1985].[3] Assistant Chief Tax Deputy Jones' affidavit further states that certified mail of the tax delinquency for the 1987 tax year was mailed on September 16, 1988, to "Mary Polan" at 1641 Seventh Avenue, Charleston, West Virginia, 25312, the last known address of the property owner as assessed at the time of the tax delinquency. *Id.* Finally, according to Assistant Chief Tax Deputy Jones' affidavit:

> The subject real estate was never assessed in the name of Mary Poling Hicks and there is no documentation available in the records maintained by the Office of the Sheriff of Kanawha County ... which would indicate that any effort was made by the owners to correct or amend the assessment in order to indicate that the property was owned or should be assessed in any name other than Mary Polan, as assessed in the tax year 1987 and in prior tax years.

The appellants contend that they never received the mailed notice of the delinquency and that, as a result, they were unaware that the taxes on the subject real estate were delinquent for the 1987 tax year.

In October 1988, the real estate was sold for delinquent taxes, pursuant to *W.Va.Code,* 11A–3–1, *et seq.* In that there were no bidders on this real estate, it was purchased by

---

1. *See W.Va.Code,* 11A–1–3 [1990].

2. *W.Va.Code,* 11A–2–13 [1983] provides, in relevant part, that a copy of the delinquent tax list must be posted at the front door of the county courthouse and published in a local newspaper at least two weeks before it is presented to the county commission for examination. *See also W.Va.Code,* 11A–2–10 [1941].

3. The relevant portion of *W.Va.Code,* 11A–3–2 [1985] directs the sheriff, on or before September

tenth, to prepare and publish a second list of delinquent lands which must include all real estate in the county remaining delinquent as of September first. The sheriff is further required to send a notice of delinquency, by certified mail, to the person whose taxes are delinquent. However, failure to receive such notice of delinquency does not affect the validity of the title of the property if it is sold under *W.Va.Code,* 11A–3–4 [1964].

the sheriff on behalf of the State, pursuant to *W.Va.Code*, 11A–3–6 [1941].[4]

One year later, in October 1989, when the taxes on the real estate for the *1988* tax year became delinquent, notice was mailed to "Mary Polan" at her last known address, which was the same address to which the 1987 delinquency notice was mailed. The notice of delinquency for the 1988 taxes read, in part:

> This is to notify you that W.Va. law requires the county sheriff to sell, at auction, any land for which taxes are due. This sale will take place on October 23, 1989 at 10 a.m. Accordingly, your real estate will be sold at auction unless payment is made prior to such sale. You may avoid such action by immediately remitting the total amount due.

The total amount due on the real estate for the tax year 1988 was $54.26.

The appellants received the delinquency notice concerning the 1988 taxes and, accordingly, on October 20, 1989, appellant Harry Stewart, Jr. paid the amount due at the Sheriff's office. Though payment of the 1988 taxes was accepted, Mr. Stewart was not told that the 1987 taxes on the real estate were delinquent,[5] that the real estate had been sold to the State for delinquent taxes or that

the appellants had eighteen months from the date of that sale in which to redeem the land.

By report dated June 21, 1990, Glen B. Gainer, Jr., Auditor and ex-officio State Commissioner of Forfeited and Delinquent Lands,[6] certified to the circuit court that the subject real estate, together with other parcels which had previously been sold to the state for non-payment of taxes due in the tax year 1987, were to be proceeded against and sold for the benefit of the school fund. *W.Va.Code*, 11A–4–9 [1961];[7] 11A–4–10 [1947].[8] *See also W.Va.Code*, 11A–4–12 [1967].[9]

By order and decree of sale, entered on or about June 3, 1991, in the case styled "*State of West Virginia, by Robert P. Howell, Deputy Commissioner of Forfeited and Delinquent Lands for Kanawha County, West Virginia, Plaintiff, vs. Charles E. Ferrell, et al.*," the circuit court adjudged and ordered, in part, that the subject real estate and other parcels had not been redeemed, released, transferred or otherwise disposed of, that title thereto remained and was vested absolutely in the State of West Virginia and that said tract and parcel of land, was, as certified by the auditor to the circuit court, subject to sale for the benefit of the school fund.

Deputy Commissioner of Forfeited and Delinquent Lands for Kanawha County, Robert B. Howell,[10] thereafter caused the time,

---

4. If no one bids the amount due at the sheriff's sale, the sheriff purchases the property for the State. *W.Va.Code*, 11A–3–6 [1941]. However, the owner has a statutory right to redeem the property within eighteen months of purchase by the State. *W.Va.Code*, 11A–3–8 [1947]. If the property is not redeemed within this period, title vests in the State, and the property may then be sold for the school fund pursuant to article 4 of chapter 11A. *W.Va.Code*, 11A–4–3 [1947]. *See* 11A–3–7 [1941].

5. *W.Va.Code*, 11A–1–7 [1943] provides that the sheriff shall not accept current taxes on any land where a prior year's taxes are not paid. However, should the sheriff accept such current taxes, through oversight, the landowner is not relieved of the liability to pay prior taxes and penalties.

6. *See W.Va.Code*, 11A–4–4 [1947], which provides that "the state auditor shall ex officio be state commissioner of forfeited and delinquent lands."

7. *W.Va.Code*, 11A–4–9 [1961] provides that all lands, which became irredeemable after May first, are to be certified by the auditor to the

circuit court as subject to sale for the school fund.

8. Under *W.Va.Code*, 11A–4–10 [1947], once the delinquent lands are certified, the deputy commissioner must institute a suit, in the name of the State of West Virginia, for the sale of such delinquent lands for the benefit of the school fund.

9. *W.Va.Code*, 11A–4–12 [1967] provides that, once a suit is instituted, the style of the suit, *State of West Virginia v. A.B., et al.*, shall be published, along with the object of the suit, the description of the land and the former owner, and shall invite other interested persons to do what is necessary to protect their interests in the land. This statute further provides that the former owner need not be personally served with process in a suit for the sale of lands for the benefit of the school fund.

10. *See W.Va.Code*, 11A–4–5 [1947], which directs the auditor to appoint "for each county in the State a deputy commissioner of forfeited and delinquent lands."

terms and place of sale of the subject real. estate to be advertised as a Class III–O legal advertisement, pursuant to *W.Va.Code*, 11A–4–12 [1967].[11]

On June 24, 1991, the subject real estate was purchased by the appellee for $500.00. This sale was approved by the court by order entered August 13, 1991. Deputy Commissioner Howell executed a deed, dated August 22, 1991, and conveyed the real estate to the appellee. The deed contained no warranties or covenants of title.

The appellants were informed in September 1991 that the real estate had been sold by the State to the appellee. The appellants were unaware that any taxes on the property were delinquent and offered to reimburse the appellee. The appellee refused the appellants' offer.

The appellants filed a complaint against the appellee in December 1991, seeking to have the provisions of *W.Va.Code*, 11A–3–2 [1985], 11A–3–8 [1947] and 11A–4–1, *et seq.* declared unconstitutional as being violative of the due process clauses of the *United States Constitution* and the *West Virginia Constitution*. The appellants also sought a decree cancelling and setting aside the tax deed conveyed to the appellee from Deputy Commissioner Howell and to enjoin the appellee from transferring title to the real estate and from interfering with the appellants' use and enjoyment thereof.

The appellee filed an answer to the complaint as well as a third-party complaint against Sheriff Ashley and Deputy Commissioner Howell.[12] In its third-party complaint, the appellee alleged that it relied to its detriment upon an assumption that all transactions made and procedures adopted by Sheriff Ashley and Deputy Commissioner Howell were in accordance with the law and constitution and that both explicit and implicit promises were made that the appellee would receive clear title to the real estate. The appellee further alleged that it would be deprived of its property, in violation of its due process rights if the trial court granted the relief prayed for in the appellants' complaint.

Summary judgment motions were filed by all parties and, by order entered December 13, 1993, the trial court granted summary judgment in favor of all parties except the appellants. The trial court ruled, *inter alia,* that, as a matter of law, the appellants received adequate notice of their delinquency and of the sale of the land and that their due process rights were not violated. The trial court further ruled that the appellee held valid title to the subject real estate.[13] It is from this order that the appellants now appeal.

II

As previously indicated, this case was decided on cross-motions for summary judgment. We are, therefore, guided by Rule 56 of the *West Virginia Rules of Civil Procedure*[14] and related case law concerning

---

**11.** See n. 9, *supra.* The notice of sale was published, once a week, for three successive weeks, in The Charleston Gazette and The Charleston Daily Mail, two newspapers published in Kanawha County. The first publication of the notice of sale was made at least fifteen days prior to the day of the sale.

**12.** The appellants never brought a direct action against either Sheriff Ashley or Deputy Commissioner Howell.

**13.** As to the summary judgment motions filed by Sheriff Ashley and Deputy Commissioner Howell, the trial court ruled, *inter alia,* that neither violated the statutes mandating the sale of the subject real estate nor did they make any warranty or covenant of title in the sale of the real estate to the appellee.

**14.** Rule 56 of the *West Virginia Rules of Civil Procedure* provides, in relevant part:

**Rule 56. Summary Judgment.**

(a) *For claimant.*—A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 30 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.

. . . .

(c) *Motion and proceedings thereon.*—The motion shall be served at least 10 days before the time fixed for the hearing. The adverse

motions for summary judgment. We stated in syllabus point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" A motion for summary judgment, under *West Virginia Rules of Civil Procedure* 56(c), is to be granted by a trial court only when the moving party shows there is no genuine issue as to any material fact and that, further, it is entitled to judgment as a matter of law. Accordingly, the standard for granting a motion for summary judgment has been articulated by this Court as follows:

> 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

Syl. pt. 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992). While this Court must draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party, *Masinter v. WEBCO Co.*, 164 W.Va. 241, 242, 262 S.E.2d 433, 435 (1980), the nonmoving party must, nevertheless, produce evidence sufficient for a reasonable jury to find in its favor. *Painter v. Peavy*, 451 S.E.2d at 758–59, *supra* [15] (*citing Anderson v. Liberty Lob-*

by, *Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986)). Thus, "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. pt. 4, *Painter, supra.*

The appellants argue that when they paid the delinquent taxes on the subject real estate for the 1988 tax year, Sheriff Ashley failed to inform them that the 1987 taxes on the real estate were delinquent, that the real estate had been sold to the State the previous year and was redeemable for eighteen months thereafter. We note that underlying the appellants' argument is the integral question of whether the notice of delinquency for the 1987 tax year was sent, via certified mail, by the Kanawha County Sheriff's Office, pursuant to *W.Va.Code*, 11A–3–2 [1985].

The appellants' contention on summary judgment that Sheriff Ashley did not mail the notice of delinquency because they did not receive it was not supported by an affidavit. Conversely, the affidavit of Assistant Chief Tax Deputy Mark Jones, submitted in support of Sheriff Ashley's motion for summary judgment on this issue, stated that "certified mail of the tax delinquency of the

---

party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

....

(e) *Form of affidavits; further testimony; defense required.*—Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.... *When a motion for summary judgment is made and supported as pro-*

*vided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.*
(emphasis added).

15. In note 5 of *Painter*, we pointed out that when a motion for summary judgment "is properly documented with such clarity as to leave no room for controversy, the nonmoving party must take the initiative and by affirmative evidence demonstrate that a genuine issue of fact exists. Otherwise, Rule 56 empowers the trial court to grant the motion." *See Hanks v. Beckley Newspapers Corp.*, 153 W.Va. 834, 172 S.E.2d 816 (1970).

1987 tax year was mailed on September 16, 1988" to "Mary Polan at 1641 Seventh Avenue, Charleston, WV 25312, the last known address of the property owner as assessed at the time of the tax delinquency as set forth on the copy of the 'firm mailing book' maintained by [the Kanawha County Sheriff's Office]."

■ Under Rule 56(e), a party is not entitled to resist a motion for summary judgment by relying only upon the pleadings.[16] *Crain v. Lightner,* 178 W.Va. 765, 768, 364 S.E.2d 778, 781 (1987). Furthermore, " '[s]ummary judgment cannot be defeated on the basis of factual assertions contained in the brief of the party opposing a motion for such judgment.' Syl. pt. 3, *Guthrie v. Northwestern Mutual Life Insurance Co.,* 158 W.Va. 1, 208 S.E.2d 60 (1974)." Syl. pt. 6, *McCullough Oil, Inc. v. Rezek,* 176 W.Va. 638, 346 S.E.2d 788 (1986).[17] Thus, the appellants' mere assertion, on summary judgment, that they did not receive the notice of delinquency for the 1987 tax year is simply not sufficient to defeat a ruling on summary judgment in favor of the appellee. The sworn statement of Assistant Chief Tax Deputy Jones, that such notice *was* sent, must be viewed as uncontroverted for purposes of deciding whether the summary judgment

motion was properly granted. It cannot be said, then, that there is any genuine issue as to this material fact. Moreover, in that there is no contention that either Sheriff Ashley or Deputy Commissioner Howell failed to adhere to the applicable statutes concerning the sale of delinquent lands, under *W.Va.Code,* 11A–3–1, *et seq.,* and the sale of lands for the school fund, under *W.Va.Code,* 11A–4–1 *et seq.,*[18] summary judgment was properly granted in their favors, as well as in favor of the appellee.[19]

We recognize the equities in this case lie with the appellants. However, in order to arrive at an equitable result in their favor, this Court would be forced to ignore well-established legal principles concerning the sale of property for delinquent taxes as well as the *Rules of Civil Procedure.*

For the reasons stated herein, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

16. *See* n. 14, *supra.*

17. "Brief" of the party, as we noted in *McCullough Oil,* 176 W.Va. at 648, 346 S.E.2d at 798, refers to the brief submitted to the trial court or to this Court on appeal.

18. We recognize that, in 1994, our legislature amended and reenacted articles 3 and 4, substituting present *W.Va.Code,* 11A–3–1 to 11A–3–68 for former *W.Va.Code,* 11A–3–1 to 11A–3–44, concerning sale of land for taxes, and substituting present *W.Va.Code,* 11A–4–1 to 11A–4–7 for former *W.Va.Code,* 11A–4–1 to 11A–4–41, concerning sale of lands for school funds. In that these amendments became effective after the institution of this action, they do not affect it.

19. In their remaining assignment of error, the appellants argue that the notice requirements set forth in chapter 11A, articles 3 and 4 have not been properly amended so as to comply with the United States Supreme Court's decision of *Men-*

*nonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (holding that mere constructive notice of a tax sale of real property to the state did not satisfy procedural due process. Instead, the state's agents must make a reasonable diligent effort to provide actual notice of such tax sale to the landowner and other interested persons duly of record, such as lienholders.) Specifically, the appellants argue that the legislature should amend *W.Va.Code,* 11A–3–2, 3 and 6 and 11A–4–12 and 23, requiring that former owners or other interested persons be served notice by certified mail *return receipt requested.* We note, firstly, that the appellants' argument rests on the assertion that they were not served notice of delinquency for the 1987 tax year. As we have already determined, the appellants' failure to submit an affidavit on this issue has proven fatal. Secondly, as the appellants themselves suggest, should changes in the aforementioned statutes be warranted, the legislature, and not this Court, is the proper entity to make such changes.