617 S.E.2d 501

**PARKETTE, INC., A West Virginia Corporation, Plaintiff Below, Appellant**

v.

**MICRO OUTDOORS ADVERTISING, LLC, Morgantown Excavators Inc., and Cornerstone Engineering, Inc., Defendants Below, Appellees.**

**and**

**Micro Outdoors Advertising, LLC, Morgantown Excavators, Inc., Third–Party Plaintiffs Below, Appellees**

v.

**Triad Engineering, Inc., and Trinity Products, Inc. Third–Party Defendants Below, Appellees.**

No. 31753.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 2005.

Decided Feb. 15, 2005.

Amy M. Smith, Esq., Daniel C. Cooper, Esq., Steptoe & Johnson, Clarksburg, West Virginia, Attorneys for Appellant.

Michael G. Gallaway, Esq., Spilman, Thomas & Battle, Weirton, West Virginia, Attorney for Cornerstone Engineering, Inc.

PER CURIAM:

In the instant case, the appellant, Parkette, Inc. (hereinafter "Parkette"), filed a complaint against the appellee, Cornerstone Engineering, Inc. (hereinafter "Cornerstone"), on November 16, 2001. The civil action was also filed against Micro Outdoors Advertising, LLC., Morgantown Excavators, Inc., and Parker Electric & Sign Service, Inc.; however, the claims against those companies are not the subject of the appeal before this Court. Through its complaint, Parkette sought to recover for damage to its restaurant building allegedly caused by a nearby outdoor advertising sign which Parkette contended was negligently erected. On September 5, 2002, Cornerstone filed a motion for summary judgment which was granted by the Circuit Court of Harrison County on August 8, 2003. Parkette appeals that order and contends that summary judgment was improper. After reviewing the facts of the case, the issues presented, and the relevant statutory and case law, this Court affirms the decision of the circuit court.

## I.

## FACTS

On April 30, 2001, Parkette entered into a lease agreement with Micro Outdoors, L.L.C. (hereinafter "Micro"), by which Parkette agreed to allow Micro to construct an outdoor advertising sign on the site of the Parkette restaurant near Clarksburg, West Virginia, in exchange for an annual payment of $1,500.00. Thereafter, Micro contracted with Morgantown Excavators, Inc. (hereinafter "MEI") to perform site excavation for the sign, and with Parker Electric & Sign Service, Inc. (hereinafter "Parker"), to actually erect the sign on Parkette's property. Micro then ordered parts for the sign to be erected by Parker from Trinity Products (hereinafter "Trinity"), who in turn sent a May 30, 2001, facsimile request to Cornerstone, an engineering company headquartered in Madisonville, Tennessee, for a sign design. Cornerstone prepared a sign design and forwarded the design specifications to Trinity on the same day the request from Trinity was received.

On June 5, 2001, Trinity requested that Cornerstone change the design specifications for the sign, including redesigning the specifications of the sign pole and the sign foundation. On June 8, 2001, Cornerstone sent the redesigned sign specifications to Trinity. Included in both designs prepared by Cornerstone were the following instructions:

Footing based on avg. soil-stiff clay.

We will need confirmation of the soil conditions for a sign of this size and height.

On June 18, 2001, Trinity ordered Cornerstone's final drawings for the redesigned sign which were subsequently forwarded to Trinity on July 12, 2001. Cornerstone then invoiced Trinity a total amount of $307.00 for the final drawings. Cornerstone's final drawings included the following instructions:

7. The foundation had been designed assuming the following soil conditions:

Allowable Lateral Bearing Pressure of 600 psf/ft. (This value is used in cube and auger footings.)

600 psf/ft corresponds to a stiff clay or equal.

If soil conditions other than those assumed are encountered (including soft soils, unstable or collapsing soils, organic materials or ground water) cease excava-

tion immediately and contact the engineers so that the foundation design can be re-evaluated.

The installer shall confirm actual soil conditions prior to installation of foundation.

8. If existing and proposed conditions are not as detailed in this design drawing the installer shall notify the engineer immediately.

In August 2001, Trinity contacted Cornerstone and advised it that the excavators digging the sign foundation encountered a large boulder and could not dig beyond twelve feet deep, and accordingly requested that Cornerstone redesign the foundation to accommodate the more shallow foundation depth. Cornerstone thereupon forwarded new calculations to Trinity based upon the original soil conditions of stiff clay. Cornerstone states that at no point was it informed that the sign was being erected on fill material as opposed to stiff clay. At some point after the sign was erected, the soil beneath and surrounding the Parkette restaurant's foundation substantially settled to a point where it was asserted that the entire structure was beyond repair requiring complete replacement of the building.

On November 16, 2001, Parkette filed a civil action against Micro Outdoors Advertising, LLC., Morgantown Excavators, Inc., Parker Electric & Sign Service, Inc., and Cornerstone, seeking to recover for damages to Parkette's restaurant building allegedly caused by the nearby outdoor advertising sign it claimed was negligently erected. Soon afterward, Triad Engineering, Inc., and Trinity Products, Inc., were joined in this action as third-party defendants.

On September 5, 2002, Cornerstone filed a motion for summary judgment pursuant to Rule 56 of the West Virginia Rules of Civil Procedure. At the September 23, 2002, final hearing on Cornerstone's motion for summary judgment, the circuit court found that there was no evidence that Cornerstone owed any duty to Parkette which could form the basis for Parkette to recover damages against Cornerstone and dismissed Cornerstone from the case. On October 3, 2002, Parkette filed a motion for reconsideration, submitting for the first time affidavits from three of its previously designated expert witnesses. Thereafter, on August 8, 2003, the circuit court issued written findings of fact and conclusions of law denying Parkette's motion for reconsideration and memorializing its prior oral ruling granting Cornerstone's motion for summary judgment. This appeal followed.

## II.

## STANDARD OF REVIEW

■■■ Parkette contends that the circuit court erred in granting summary judgment to Cornerstone. In Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court stated that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is required when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court held: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

■■■ Moreover, "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). In addition, "[i]f the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the exis-

tence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure." Syllabus Point 3, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995). With these standards in mind, we proceed to consider Parkette's arguments.

## III.

### DISCUSSION

■ Parkette argues that the circuit court erred in denying its motion for summary judgment and granting summary judgment in favor of Cornerstone, resulting in a holding. that released Cornerstone from liability with regard to the sign erected on Parkette's property. Parkette maintains that summary judgment was inappropriate and that this action is controlled by *Eastern Steel Constructors, Inc. v. City of Salem,* 209 W.Va. 392, 549 S.E.2d 266 (2001). Parkette points out that in *Eastern,* this Court held that a design professional may be liable for professional negligence even in the absence of privity of contract.

Parkette further argues that there are genuine issues of material fact regarding whether Cornerstone was negligent and whether that negligence proximately caused damage to the Parkette restaurant structure. Parkette says that Cornerstone was contacted and informed that the soil conditions did not comport with the design specifications and that Cornerstone negligently failed to ask any specific questions regarding the composition of the soil conditions or to make the necessary design changes to avoid the destruction of the Parkette restaurant structure. Parkette states that Cornerstone's notation on its design that was sent to Trinity providing, "[w]e will need a confirmation of the soil conditions for a sign of this size and height," demonstrates that Cornerstone itself recognized that it had an obligation and duty to confirm soil conditions to prevent damages precisely like those that resulted to the Parkette restaurant. Finally, Parkette contends

that its expert testimony was adequate to defeat summary judgment.

Conversely, Cornerstone argues that summary judgment was appropriate and contends that Parkette did not demonstrate to the circuit court that there was any evidence, including expert testimony, to support its theory of negligence. As such, Cornerstone says the circuit court correctly concluded that no genuine issue of material fact existed that would lead to the conclusion that Cornerstone had any further duties other than those it performed. Cornerstone further argues that the affidavits of Messrs, Williams, Sausen, and Hill were not properly before the circuit court prior to its oral ruling granting Cornerstone's motion for summary judgment. Cornerstone asserts that it is well-established that a motion for reconsideration does not present a forum for the consideration of evidence which was available but not offered prior to the court's ruling on the summary judgment motion. Cornerstone, citing *Powderidge Unit Owners Assoc. v. Highland Properties, Ltd.,* 196 W.Va. 692, 706, 474 S.E.2d 872, 886 (1996), says that this rule is in place to "ensure that litigants who have vigorously and diligently complied with the summary judgment mandates of Rule 56 are not penalized by the action of those who choose not to comply." [1]

Cornerstone further contends that Parkette's argument that its expert's deposition demonstrated that an issue of fact existed is without merit. Cornerstone maintains that the only information provided to it with regard to soil conditions was that the excavators on site encountered a large boulder and were unable to dig the foundation beyond twelve feet, *not* that the soil conditions were different than those assumed. Cornerstone adds that it did not supervise the erection of the sign on site; that it had no right to either inspect or halt the construction; and that it was not retained by Parkette to design the sign or to evaluate soil composition.

■ After thoroughly reviewing the record and considering all of the parties' argu-

1. While Cornerstone's argument with regard to Parkette's presentation of expert testimony after the circuit court ruled on summary judgment is compelling, the issue is moot since we are affirming the circuit court's grant of summary judgment in favor of Cornerstone.

ments, we believe that the circuit court's grant of summary judgment to Cornerstone was proper. Cornerstone established by affirmative evidence that there was no genuine issue of material fact for trial with regard to Parkette's claims against it. In Syllabus Point 5 of *Eastern,* we said,

> The determination of whether a defendant in a particular case owed a duty to the plaintiff is not a factual question for the jury; rather the determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law. (Citations omitted.).

In this case, the circuit court found as a matter of law that Parkette failed to satisfy its burden that a genuine issue of material fact existed for trial with respect to whether Cornerstone owed any duty to Parkette. The circuit court further found that "both the written and oral assertions of [Parkette's] motion for summary judgment are insufficient as a matter of law." Upon our review of the record, we believe that Parkette's initial and supplemental written opposition to summary judgment did not dispute or even address any of the facts or exhibits presented by Cornerstone's motion for summary judgment. Parkette's only response was by way of written and oral representations of its counsel, which are insufficient to defeat summary judgment. *See* Syllabus Point 3 of *Guthrie v. Northwestern Mutual Life Ins. Co.,* 158 W.Va. 1, 208 S.E.2d 60 (1974) ("Summary judgment cannot be defeated on the basis of factual assertions contained in the brief of the party opposing a motion for summary judgment for such judgment."); *City of Morgantown v. W.Va. University Medical Corp.,* 193 W.Va. 614, 620, 457 S.E.2d 637, 643 (1995) (holding plaintiff's assertions at oral argument insufficient to defeat summary judgment); and *Stewart v. SMC Inc.,* 192 W.Va. 441, 446–447, 452 S.E.2d 899, 904–905 (1994) (holding that plaintiff's written and oral assertions were unsupported by affidavit or other testimony of record insufficient to defeat summary judgment.).

Moreover, with regard to the deposition testimony of Parkette's expert, Mr. Sausen,

we believe that he offered no information that would defeat Cornerstone's motion for summary judgment. In Syllabus Point 9 of *Eastern* we wrote:

> A design professional (e.g. an architect or engineer) providing plans and specifications that will be followed by a contractor in carrying out some aspect of a design, impliedly warrants to the contractor, notwithstanding the absence of privity of contract between the contractor and the design professional, that such plans and specifications have been prepared with the ordinary skill, care and diligence commensurate with that rendered by members of his or her profession.

Initially, we note that Parkette did not provide the circuit court with any specific testimony that it contended raised a factual issue. In fact, during the September 23, 2002, final hearing on Cornerstone's motion for summary judgment, Parkette's counsel, without providing specifics, simply argued that Mr. Sausen's deposition testimony was critical of Cornerstone and therefore created a genuine issue of material fact for trial. Nonetheless, the circuit court requested, considered, and reviewed Mr. Sausen's deposition testimony and concluded that there was nothing in his testimony to indicate upon which of the parties the duty may have fallen. Likewise, we have reviewed Mr. Sausen's deposition, as well as the depositions that were presented by Parkette *after* the circuit court ruled against Parkette and during its motion for reconsideration. Accordingly, we agree with the circuit court that none of the depositions or any of the evidence presented by Parkette was sufficient to defeat Cornerstone's motion for summary judgment. In particular, Mr. Sausen did not offer, nor could he offer, an expert opinion as to whether the sign caused the building to move as he testified that such a determination would have to be made by a geo-technical engineer. In fact, Mr. Sausen admitted that it was beyond his expertise to identify why the soil was moving and he could not attribute the movement to the placement or construction of the sign. When asked by Cornerstone's counsel whether there was any problem or any negligence on the part of Cornerstone and the design of the

sign, Mr. Sausen said, "I really wouldn't have a means of determining that."

In this case, "from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 2, *Williams v. Precision Coil, Inc.* Parkette is correct that a design professional owes some duty of care to a contractor. *See* Syllabus Point 6, *Eastern.* Nonetheless, this case is very different from the factual circumstances in *Eastern.* That case was a narrowly written case that concluded that because of the special relationship that existed between a contractor and a design professional that are both hired by the same owner, the design professional owed a duty to the contractor and therefore, the contractor could sue the professional for non-economic damages even in the absence of privity of contract. The instant case involves property damages, so it is not a non-economic case as was the situation in *Eastern.* Additionally, this case does not involve a suit between two parties who were both hired by the same property owner. Here, there are several layers of contracts before you get to Cornerstone. In fact, Parkette did not hire or employ *any* of the parties. Instead, Parkette entered into a lease agreement for $1,500.00 per year with Micro whereby Micro paid Parkette to allow it to construct a billboard sign on an unused section of Parkette's property. In turn, Micro hired MEI to perform site excavation, hired Parker to erect the sign, and ordered sign parts from Trinity to deliver to Parker. In a separate transaction, Trinity, a Missouri corporation, contacted Cornerstone, a Tennessee corporation, and requested a sign design. The facts of this case simply do not create the same type of special relationship or reliance that created the special relationship referred to in *Eastern.*

Moreover, even though Parkette was not the contractor, and even if we assume for the sake of argument that Cornerstone owed a special duty to Parkette, there simply is no evidence that Cornerstone breached any such duty to Parkette, the contractor, or any of the involved parties. Cornerstone was hired by Trinity to design the sign that was to be placed on Parkette's property. Cornerstone then designed a sign and in its design specifications to Trinity it clearly stated that such sign specifications were contingent upon precise soil conditions. Cornerstone instructed Trinity that if any soil conditions were encountered other than stiff clay, *i.e.*, soft soils, unstable or collapsing soils, organic materials or ground water, that it was to "cease excavation immediately and contact the engineers so that the foundation design can be reevaluated." It further provided: "The installer shall confirm actual soil conditions prior to installation of foundation [and that] [i]f the existing and proposed conditions are not as detailed in this design drawing the installer shall notify the engineer immediately." Nowhere in the design specifications and nowhere within the pleadings or expert testimony was any evidence presented to lead a trier of fact to a conclusion holding Cornerstone liable for a breach of duty with regard to its design of the sign. Further, it is obvious from the $307.00 total fee for Cornerstone's design that none of the parties involved with the construction of the sign expected Cornerstone to travel from Madisonville, Tennessee to Clarksburg, West Virginia to conduct soil tests. Likewise, there is no evidence that Cornerstone had the duty or even the authority to supervise or inspect the erection of the sign. Cornerstone was hired by Trinity to design the sign and not to oversee the construction of the sign or to evaluate soil composition. We believe that Cornerstone fulfilled its obligations to Trinity in designing a sign based upon stiff clay soil conditions. Consequently, the circuit court properly granted summary judgment to Cornerstone.

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Harrison County entered on August 8, 2003, is affirmed.

Affirmed.