607 S.E.2d 394

Don R. STEWART and Adelaide Stewart, Husband and Wife, Plaintiffs Below, Appellants

v.

Dr. Jeffrey GEORGE, St. Mary's Hospital, Also Known as St. Mary's Hospital of Huntington, Inc., a West Virginia Corporation, Defendants Below, Appellees.

No. 31667.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 29, 2004.

Decided Nov. 15, 2004.

Phillip M. Stowers, Stowers & Associates, Charleston, for the Appellants.

Jeff C. Woods, Jackson Kelly, P.L.L.C., Charleston, for the Appellee, Dr. Jeffrey George.

D.C. Offutt, Jr., Stephen S. Burchett, Sonja C. Vital, Robert M. Sellards, Offutt, Fisher & Nord, Huntington, for the Appellee, St. Mary's Hospital.

PER CURIAM:

This is an appeal by Donald and Adelaide Stewart (hereinafter "Appellants") from a February 4, 2003, order of the Circuit Court of Cabell County granting summary judgment to Dr. Jeffrey George and St. Mary's Hospital (hereinafter "Appellees"). In the underlying medical malpractice action, the Appellants contend that the Appellees failed to properly diagnose and treat Appellant Donald Stewart and that such negligence proximately caused damages to the Appellants. The lower court granted summary judgment to the Appellees based upon the alleged absence of expert witness opinion that any deviation from the standard of care actually caused the medical problems suffered by Appellant Mr. Stewart. On appeal, the Appellants contend that genuine issues of material fact exist precluding summary judgment. Upon thorough review of the briefs, record, arguments of counsel, and applicable precedent, we reverse the summary judgment granted by the lower court and remand for further proceedings.

## I. Factual and Procedural History

On March 6, 1998, Appellant Donald Stewart underwent heart bypass surgery at St. Mary's Hospital. The surgery[1] was performed by Appellee Dr. Jeffrey George. The parties agree that the surgery itself was uneventful and that no negligence occurred during the performance of the surgery. However, subsequent to the surgery, Mr. Stewart suffered a substantial infection and required additional treatment. Mr. Stewart was ultimately transferred to Johns Hopkins Hospital in Baltimore, Maryland, where his condition was properly diagnosed and mitral valve repair surgery was also performed. The Appellants filed a medical malpractice action on March 17, 2000, asserting that the Appellees' failure to diagnose and properly treat Mr. Stewarts' hyperglycemia,[2] a condition which rendered him susceptible to infection, caused the development of the post-operative infection and required further extensive medical treatment.

On February 4, 2003, the lower court granted summary judgment to the Appellees, finding no genuine issue of material fact regarding causation. The lower court reviewed the deposition testimony of the Appellants' expert witness, Dr. Thomas O'Grady, and concluded that the testimony of Dr. O'Grady did not establish that any failure to properly treat or diagnose Mr. Stewart's condition actually caused the infection[3] or other damages. Finding that the necessary link between the alleged injury and any deviation from the standard of care was absent, the lower court granted summary judgment to the Appellees.

## II. Standard of Review

The standard of review for summary judgment granted by the lower court has been established as follows in syllabus point one of *Mountain Lodge Association v.*

---

1. Prior to surgery, it was determined that Mr. Stewart suffered from an occluded artery and that cardiac bypass surgery should be performed to restore proper blood flow and improve cardiac function.

2. Hyperglycemia is the condition that occurs when blood glucose levels rise and remain elevated.

3. According to Dr. O'Grady, Mr. Stewart suffered "a deep sternal infection which required incision, drainage, debridement, and ultimately myocutaneous flaps in order to cover the defect." During hospitalization, Mr. Stewart experienced congestive heart failure and required dialysis due to acute renal failure. He also required a mechanically assisted ventilation machine and a tracheotomy.

*Crum & Forster Indemnity Co.*, 210 W.Va. 536, 558 S.E.2d 336 (2001): " 'A circuit court's entry of summary judgment is reviewed *de novo.*' Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)." In syllabus point three of *Aetna Casualty & Surety Co. v. Federal Insurance Company of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court explained: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Further, in syllabus point two of *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), this Court stated: "Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." As required of the lower court, this Court must also "draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion." *Painter*, 192 W.Va. at 192, 451 S.E.2d at 758.

### III. Discussion

West Virginia Code § 55–7B–3 (1986) (Repl. Vol. 2000) provides that a plaintiff in a medical malpractice action must prove that a health care provider deviated from the applicable standard of care and that this deviation was the proximate cause of injury to the plaintiff. Specifically, the statute [4] provides as follows:

The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:

(a) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reason-

able, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and

(B) Such failure was a proximate cause of the injury or death.

The Appellants in the case sub judice contend that the lower court erred by finding that there was no genuine issue of material fact as to whether the Appellees' negligence caused injury to the Appellants. The Appellants argue that the failure to manage the hyperglycemia and diabetes contributed to the Appellant's development of the post-operative infection and necessitated the mitral valve repair ultimately performed at Johns Hopkins. The Appellants further maintain that Dr. O'Grady's expert opinion testimony clearly establishes issues of fact regarding whether the Appellees' failure to properly manage the hyperglycemia caused the infection, as well as whether failure to properly diagnose and treat the Appellant's post-operative infection and mitral valve leakage caused additional damages.

In addressing such causation issues, this Court has consistently held that " '[p]roximate cause' must be understood to be that cause which in actual sequence, unbroken by any independent cause, produced the wrong complained of, without which the wrong would not have occurred." Syl. Pt. 3, *Webb v. Sessler*, 135 W.Va. 341, 63 S.E.2d 65 (1950). In *Mays v. Chang*, 213 W.Va. 220, 579 S.E.2d 561 (2003), a medical malpractice action, this Court held that because reasonable jurors could draw differing conclusions from blood test evidence, the trial court had committed reversible error by excluding evidence regarding whether the physician had a duty of care to administer blood tests to the patient.[5] The lower court had ruled that "the appellant could not establish a causal connection between the appellee's failure to give Mr. Mays a CBC or hemoglobin a/lc test

---

**4.** An additional section added to this statute in 2003, addressing the issue of a "loss of chance" theory forwarded by a plaintiff, has no relevance to this cause of action and is applicable to causes of action alleging medical professional liability which were filed on or after July 1, 2003.

**5.** This Court explained: "During the trial, the circuit court completely excluded the appellant's evidence regarding whether the standard of care imposed upon appellee Dr. Chang a duty to perform blood tests, tests that might have shown Mr. Mays was anemic as a result of his colorectal cancer." 213 W.Va. at 223, 579 S.E.2d at 564.

and his death due to colorectal cancer." 213 W.Va. at 224, 579 S.E.2d at 565. In syllabus point one of *Mays*, this Court explained that " '[t]he proximate cause of an injury is the last negligent act contributing to the injury and without which the injury would not have occurred.' Syllabus Point 5, *Hartley v. Crede*, 140 W.Va. 133, 82 S.E.2d 672 (1954), *overruled on other grounds, State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983)."

■ This Court clarified in *Mays* that a plaintiff, while bearing the "burden of proof . . . to show that a defendant's breach of a particular duty of care was a proximate cause of the plaintiff's injury," is not required to demonstrate that such breach was the *sole* proximate cause of the injury. 213 W.Va. at 224, 579 S.E.2d at 565. In syllabus point two of *Mays*, this Court explained as follows:

"A party in a tort action is not required to prove that the negligence of one sought to be charged with an injury was the sole proximate cause of an injury. *Divita v. Atlantic Trucking Co.*, 129 W.Va. 267, 40 S.E.2d 324 (1946), is overruled to the extent it states a contrary rule." Syllabus Point 2, *Everly v. Columbia Gas of West Virginia, Inc.*, 171 W.Va. 534, 301 S.E.2d 165 (1982).

■ In addressing questions of causation, this Court has been careful to defer to the judgment of a jury where different conclusions may be drawn from the presented facts, noting that "questions of proximate cause are often fact-based issues reserved for jury resolution." *Mays*, 213 W.Va. at 224, 579 S.E.2d at 565. In syllabus point three of *Mays*, this Court stated:

"Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." Syllabus Point 5, *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964).

*See also* Syl. Pt. 2, *Evans v. Farmer*, 148 W.Va. 142, 133 S.E.2d 710 (1963) ("The questions of negligence, contributory negligence, proximate cause, intervening cause and concurrent negligence are questions of fact for the jury where the evidence is conflicting or when the facts, though undisputed, are such that reasonable men draw different conclusions from them").

Subsequent to its proximate cause analysis, the *Mays* Court concluded as follows:

In the instant case, we believe that a reasonable jury could conclude from the appellant's evidence that the appellee had a duty of care to regularly perform CBC or hemoglobin a/lc tests on Mr. Mays, and that the appellee breached that duty. A jury could further have concluded that the breach of that duty was a proximate cause of the harm suffered by Mr. Mays—the harm being the lost chance of early detection and treatment of the colorectal cancer. In other words, a jury could conclude that the appellee's allegedly negligent inactions contributed to Mr. Mays' lost chance of early detection and treatment, and conclude that if the appellee had complied with the standard of care, the harm to Mr. Mays would not have occurred. Because we believe reasonable jurors could draw different conclusions from the evidence proffered by the appellant, we find that the circuit court erred in excluding the appellant's blood test evidence.

213 W.Va. at 224–25, 579 S.E.2d at 565–66 (footnote omitted).

■ Upon thorough review of Dr. O'Grady's deposition testimony in the case sub judice, evaluated in a light most favorable to the Appellants, we find that there is sufficient evidence to potentially create a dispute in the minds of reasonable jurors regarding whether the Appellees' deviations from the applicable standards caused injury to the Appellants. Dr. O'Grady opined that Mr. Stewart was "an undiagnosed diabetic when he first arrived at St. Mary's in February of the year '98, and that was not pursued." Glucose tolerance tests and hemoglobin serum tests were not performed, according to Dr. O'Grady's review of Mr. Stewart's medical records. Dr. O'Grady specified that "the failure [to manage hyperglycemia] contributed to the development of his infection. . . ." Because "hyperglycemia is a risk factor for infection

in cardiac surgery," Dr. O'Grady stated that "it has to be diagnosed definitively and the sugars brought down into acceptable ranges." He further stated that "my opinion is that the failure to diagnose and treat the hyperglycemia allowed a risk factor to be added to his other risk factors, and that contributed to the development of the infection."

The Appellees emphasize that Dr. O'Grady also observed that he could not identify the precise cause of the infection and that other factors could not be excluded as contributing causes. As explained above, however, the possibility that other causes contributed to the ultimate injury does not warrant a summary judgment in favor of the Appellees. This Court has consistently observed that a plaintiff is not required to prove that the negligence in question was the *sole* proximate cause of an injury. The presence of the additional risk factors, based upon Mr. Stewart's physical condition and medical history, actually increased the need for proper diagnosis and management of the hyperglycemia, according to Dr. O'Grady. He stated: "I think the presence of those risk factors makes the management of hyperglycemia even more compelling. That, to me, would be a further indication to bring in an endocrinologist to get this sugar problem under control."

This Court has also consistently recognized that questions of proximate cause are often fact-based issues best resolved by a jury. The uncertainties implicit in this medical record are prime territories for jury determination. Summary judgment in this situation was inappropriate. We find that a reasonable jury could conclude from the Appellants' evidence that the Appellees breached a duty of care to regarding diagnosis and treatment of Mr. Stewart's hyperglycemia. A jury could further conclude that the breach of that duty was a proximate cause of the harm suffered by Mr. Stewart. A jury could deduce that the Appellees' "allegedly negligent inactions contributed to" Mr. Stewart's injuries. *Mays,* 213 W.Va. at 225, 579 S.E.2d at 566. Based upon the foregoing, we find that

the lower court erred in granting summary judgment to the Appellees.

Reversed and Remanded.